UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION


FILED
SEP 27 2022

| | |
|---|---|
| MATTHEW C. KURTENBACH,<br><br>Plaintiff,<br><br>vs.<br><br>CODINGTON COUNTY, POLITICAL SUBDIVISION OF THE STATE OF SOUTH DAKOTA AND OWNS AND OPERATES THE CODINGTON COUNTY JAIL; IN OFFICIAL AND INDIVIDUAL CAPACITY; BRAD HOWELL, SHERIFF OF CODINGTON COUNTY AND FINAL POLICY MAKER FOR CODINGTON COUNTY SHERIFF'S OFFICE; IN OFFICIAL AND INDIVIDUAL CAPACITY; MATT BLACKWELDER, CHIEF CORRECTIONAL OFFICER AT THE CODINGTON COUNTY JAIL AND FINAL POLICY MAKER FOR THE CODINGTON COUNTY JAIL; IN OFFICIAL AND INDIVIDUAL CAPACITY; REBECCA REITER, DEPUTY STATE'S ATTORNEY FOR THE CODINGTON COUNTY STATE'S ATTORNEY; IN OFFICIAL AND INDIVIDUAL CAPACITY; AND TREVOR SCHIMMEL, DEPUTY SHERIFF FOR THE CODINGTON COUNTY SHERIFF'S OFFICE; IN OFFICIAL AND INDIVIDUAL CAPACITY;<br><br>Defendants. | 1:20-CV-01008-CBK<br><br><br>MEMORANDUM OPINION<br>AND ORDER |

In this civil rights action filed pursuant to 42 U.S.C. § 1983, plaintiff Matthew Kurtenbach contends that defendants Codington County, Brad Howell, Matt Blackwelder, Rebecca Reiter, and Trever Schimmel violated his constitutional rights

when he was confined at the Codington County Detention Center in Watertown, South Dakota. This matter is before the Court on defendants' Motion for Summary Judgment. The motion should be granted in part and denied in part.

**I.     Background**

When it comes to civil rights actions filed against government officials, Mr. Kurtenbach is a frequent filer with diamond elite status. This particular case arises from his pretrial detention in Codington County Detention Center. Kurtenbach was arrested and briefly placed in the Hughes County Jail pursuant to pending state criminal charges. With the suspicion that Kurtenbach was violating a no-contact condition of his bond by speaking with the victim of an aggravated assault that he previously committed against his girlfriend, Shanna Doyle, Deputy State's Attorney Rebecca Reiter requested copies of Kurtenbach's recorded phone calls. Those recordings confirmed that Kurtenbach was speaking with Doyle. Shortly after listening to those calls, Kurtenbach was transferred to the Codington County Detention Center.

When he arrived at the Detention Center on March 24, 2020, Kurtenbach asked to place a phone call to a law firm. The Detention Center uses a system for inmate phone calls that provides free and secure calls to legal counsel. An attorney's phone number must be programmed into the system before the call is placed for it to be free and private. If a number is not programmed as an attorney's phone number, the call is not free or private and the system plays a message stating that all phone calls may be monitored or recorded. Although most attorneys that are local to the Detention Center in the Watertown, South Dakota, area already have their phone numbers programmed into the system, Kurtenbach asked to speak with an attorney located in Sturgis, South Dakota, across the state. As such, that number was not programmed into the system as an attorney's phone number, and the call was recorded.

Kurtenbach states that the Detention Center's staff assured him that the call would not be recorded. Matt Blackwelder, Chief Corrections Officer at the Detention Center, stated that he has no recollection of Kurtenbach's request to program the attorney's phone number into the system. He testified that it was his practice to verify an attorney's

2

phone number before entering it into the system, and that the number was programmed into the system the following day on March 25, 2020.

Because Reiter believed that Kurtenbach was continuing to violate the no-contact order of his bond, she requested copies of his recorded phone calls from the Detention Center. Deputy Sheriff Trever Schimmel gave her a copy of the March 24, 2020, call and they both listened to it. Before Kurtenbach's conversation began, a message played stating that the call is subject to recording and monitoring. Kurtenbach was initially confused as to why the call did not immediately go through as an attorney phone call. He briefly spoke with a woman appearing to be a receptionist before asking her to transfer his call to a third party. The receptionist told Kurtenbach that it was a collect call, and that they were being charged by the minute. Kurtenbach replied that he would be quick. He then briefly spoke with another woman who seems to be his girlfriend. It was later determined that Kurtenbach had called a law firm. Nothing identifies the call as being to a law firm, and at no point during the call does Kurtenbach speak with an attorney or ask for legal advice. Kurtenbach was released from the Detention Center on approximately May 17, 2020.

Kurtenbach returned to the Detention Center on September 29, 2020, after being extradited from Minnesota to face charges in South Dakota for possession of a forged instrument. State v. Kurtenbach, A21-0526, 2021 WL 4259152, at *1 (Minn. Ct. App. Sept. 20, 2021). Once he was back, Kurtenbach filed a grievance about the Detention Center's policy that prohibited inmates from having any magazines. Blackwelder rejected his grievance and Sheriff Brad Howell rejected his subsequent appeal.[1] Shortly afterwards, the Detention Center changed the magazine policy. Kurtenbach also filed a grievance about the quantity of food provided to inmates. Blackwelder denied that grievance as well, and Howell denied it on appeal. Kurtenbach claimed that the prison was not following its own menu when serving inmates meals and that he was losing

---

[1] Although Howell initially stated that Kurtenbach never appealed his grievance concerning the magazine ban, he amended his statement after Kurtenbach produced a document showing that Howell rejected his appeal.

weight as a result of not eating enough food. The Detention Center produced a menu that shows it serves inmates three meals and an average of 2,850 calories per day.

Kurtenbach also states that officials from the Detention Center refused to permit him to appear in an online sentencing hearing in Yellow Medicine County, Minnesota, on October 21, 2020. Because he missed the hearing, Kurtenbach was not sentenced until April 5, 2021. The Minnesota court refused to grant him credit for the time served in the Detention Center against his Minnesota sentence based on Minnesota law that distinguishes between intrajurisdictional custody and interjurisdictional custody. See Kurtenbach, 2021 WL 4259151, at *2. Since the Minnesota court would not give him credit, Kurtenbach claims that he was caused to serve approximately four and a half months longer incarceration in Minnesota. Blackwelder states that the Detention Center already had video court hearings scheduled at the same time for other inmates. The Yellow Medicine County Court did not coordinate the time with the Detention Center and had instead set the time unliterally. Due to the conflict, Blackwelder emailed Kurtenbach's Minnesota lawyer and gave him several times to reschedule the missed sentencing hearing. According to Blackwelder, Kurtenbach had a video hearing with the Yellow Medicine County Court a week later on October 29, 2020.

## II.   Standard of Review

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; Bedford v. Doe, 880 F.3d 993, 996 (8th Cir. 2018). The United States Supreme Court has held that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (internal quotations omitted).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). That is, to make summary judgment inappropriate, there must be a factual dispute concerning facts the existence or nonexistence of which "must be outcome determinative under prevailing law." Walls v. Petrohawk Props., LP, 812 F.3d 621, 625 (8th Cir. 2015) (quoting Grey v. City of Oak Grove, 396 F.3d 1031, 1034 (8th Cir. 2005)).

Thus, in accordance with Rule 56(c), the party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Upon such a showing, the burden shifts to the non-movant to present affirmative evidence, beyond the pleadings, showing that a genuine issue of material fact exists. Anderson, 477 U.S. at 256–57. To meet its burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmovant must be able to "show there is sufficient evidence to support a jury verdict in their favor." Nat'l Bank of Com. v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999). After this exercise, "we view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party." Northport Health Servs. of Arkansas, LLC v. Posey, 930 F.3d 1027, 1030 (8th Cir. 2019). "To show a genuine dispute of material fact, a party must provide more than conjecture and speculation." Zayed v. Associated Bank, N.A., 913 F.3d 709, 720 (8th Cir. 2019).

**III. Analysis**

Kurtenbach asserts various claims against the defendants using 42 U.S.C. § 1983. He first claims that Reiter, Schimmel, and Codington County violated his constitutional rights by listening to a phone call he made while in the Detention Center. He then claims that Howell, Blackwelder, and Codington County violated his constitutional rights by prohibiting all magazines in the Detention Center, failing to provide him with adequate

food and nutrition, and prohibiting him from appearing by video conference for a scheduled court hearing. All claims against the individuals are made in their personal and official capacities. Kurtenbach requests declaratory and injunctive relief in addition to monetary damages.

At the outset, all Kurtenbach's claims for injunctive relief are moot because he is no longer confined within the Detention Center. See Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (inmate's claims for injunctive and declaratory relief to improve prison conditions are moot when he is transferred to another facility and is no longer subject to those conditions). According to Kurtenbach, he was transferred to the South Dakota State Penitentiary on January 6, 2021, after entering into a plea agreement. As such, those claims should be dismissed.

The defendants assert qualified immunity against all claims made in their individual capacities. "Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Thurmond v. Andrews, 972 F.3d 1007, 1011 (8th Cir. 2020) (quoting Dillard v. O'Kelley, 961 F.3d 1048, 1052 (8th Cir. 2020) (en banc) (internal quotation marks omitted)). The test for qualified immunity has two parts: (1) "whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." Ehlers v. City of Rapid City, 846 F.3d 1002, 1008 (8th Cir. 2016) (quoting Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012)). The Court may analyze the two prongs of qualified immunity in either order. Thurmond, 972 F.3d at 1011. A "clearly established right is one that is sufficiently clear that every reasonable official would have understood what he is doing violates that right." Dillard, 961 F.3d at 1052 (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). The Court does not "define clearly established law at a high level of generality." Id. at 1052 (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018)). "Rather, we look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the

6

statutory or constitutional question beyond debate.'" Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).

### a. The Recorded Phone Call

Kurtenbach claims that Reiter and Schimmel violated the Fourth Amendment and the Federal Wiretap Act when they listened to a recorded phone call that he made to a law firm in an attempt to speak with his girlfriend. He does not argue that he was intending to speak with his lawyer and does not claim the call was covered by attorney-client privilege.

#### i. Fourth Amendment Violation

There can be no Fourth Amendment violation unless a person has a "constitutionally protected reasonable expectation of privacy." United States v. McIntyre, 646 F.3d 1107, 1111 (8th Cir. 2011) (quoting California v. Ciraolo, 476 U.S. 207, 211 (1986)). This protection extends to the recording of phone calls if the person has a legitimate expectation of privacy. See Katz v. United States, 389 U.S. 347, 353 (1967). Although pretrial detainees do not forfeit all their Fourth Amendment rights, their reasonable expectation of privacy while incarcerated is of a "diminished scope." Arnzen v. Palmer, 713 F.3d 369, 372 (8th Cir. 2013) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). Society recognizes that a prisoner's expectation of privacy will always yield to the "paramount interest in institutional security." Hudson v. Palmer, 468 U.S. 517, 528 (1984). Moreover, an inmate impliedly consents to having his telephone conversations taped when he knows that a policy of recording inmate calls exists. See United States v. Eggleston, 165 F.3d 624, 626 (8th Cir. 1999); United States v. Horr, 963 F.2d 1124, 1126 (8th Cir. 1992).

Here, Kurtenbach cannot establish a violation of his Fourth Amendment rights because he consented to having the call recorded. He appears to claim that the phone call from the jail did not play a warning message stating that the call was being recorded. But in the recording of the call, a warning clearly plays shortly before the conversation begins stating, "this call is subject to recording and monitoring," and the call presents an option to continue or disconnect. Kurtenbach continued the call and now argues that he did not

7

hear the message because he put the phone down while the call was being accepted, despite the warning being played a mere ten seconds before he began speaking. Even if that were true, the circumstances surrounding the call show that Kurtenbach was aware that it was being recorded. Kurtenbach admits familiarity with jail phone systems and the requirement that attorney phone numbers must be entered into a system before they are free and private. Here, as soon as the call went through, Kurtenbach questioned the receptionist why the call did not immediately go through and was informed that it was a collect call. Before the call was transferred, Kurtenbach acknowledged that the call was not free and stated that he would be quick so that it would not cost a lot of money. Based on these circumstances, he cannot now argue that he was unaware the call was being recorded as a non-attorney phone call.

Kurtenbach quarrels with Reiter's reason for listening to his phone call, but her reasoning does not determine whether there was a Fourth Amendment violation. He states that Reiter's investigation for the violation of a no-contact condition of his bond was invalid because the bond was terminated by the time he made the call to his girlfriend. But Reiter did not need a valid reason to listen to Kurtenbach's call because it was not protected by the Fourth Amendment. He additionally argues that because the phone call was placed to a law firm, the Detention Center was forbidden from recording it. But this misstates the Fourth Amendment reasonable expectation of privacy standard and conflates the use of the recorded phone call with an attorney-client privilege violation that Kurtenbach does not, and could not, assert. Accordingly, Summary Judgment on Kurtenbach's claim against Reiter and Schimmel should be granted.

### ii. Federal Wiretap Act Violation

Kurtenbach also claims that recording his call violated the Federal Wiretap Act that prohibits the intentional interception of any wire, oral, or electronic communications. See 18 U.S.C. § 2511. This claim fails for two reasons. First, under 18 U.S.C. § 2511(2)(c), there is no violation if one of the parties to the call consents to its interception. Like for his Fourth Amendment claim, Kurtenbach consented to the recording of the call because based on the warning and circumstances, he understood that

the call was not private. Second, the Act allows interception "by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). The Seventh Circuit concluded that prison officials are "investigative or law enforcement officers," and that when they record inmate phone calls "in accordance with established prison routine," they are acting within the "ordinary course" of their duties. United States v. Sababu, 891 F.2d 1308, 1329 (7th Cir. 1989). The Eighth Circuit also recognized this reasoning in Horr but affirmed the district court on the grounds of consent. 963 F.2d at 1126. Here, it is undisputed that officials were acting in accordance with established prison routine when they recorded the call that was not properly placed to an attorney. Therefore, this claim also falls within the § 2510(5)(a)(ii) exception. Summary Judgment should be granted in favor of Reiter and Schimmel.

### b. Magazine Ban

Kurtenbach argues that the Detention Center's total ban on magazines violates his First Amendment rights. In response, Howell and Blackwelder assert qualified immunity. They concede that the ban violated the First Amendment but argue that the right was not clearly established at the time of the violation.

Inmates do not automatically surrender their First Amendment rights upon incarceration. Beard v. Banks, 548 U.S. 521, 528 (2006). But "the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere." Id. Restrictive prison regulations are permitted if they are "reasonably related to legitimate penological interests and are not an exaggerated response to such objectives." Id. at 528 (cleaned up) (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)). The clearly established test from Turner provides four factors relevant to the reasonableness of a regulation at issue:

> (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) and whether there exist alternatives to accommodate the prisoner with a *de minimis* cost.

9

Murchison v. Rogers, 779 F.3d 882, 887 (8th Cir. 2015) (quoting Turner, 482 U.S. at 89–91).

The defendants argue that because there is no Supreme Court or Eighth Circuit case involving a blanket ban on magazines, the right is not clearly established. It is true that precedents about prisoner's First Amendment rights generally involve some sort of nuanced prohibition. In Turner, the prison regulation barred inmate to inmate correspondence. 482 U.S. at 81–82. In Beard, the prison prohibited the most incorrigible inmates in the long-term segregation unit access to all newspapers, magazines, and personal photographs. 548 U.S. at 525–26. Eighth Circuit cases are similarly nuanced. In Murchison, the prison banned a single issue of *Newsweek* magazine. 779 F.3d at 885. Sisney v. Kaemingk involved a penitentiary's policy prohibiting possession of pornography. See 15 F.4th 1181, 1188–89 (2021). In Williams v. Brimeyer, 116 F.3d 351, 352–53 (8th Cir. 1997) and Murphy v. Mo. Dep't of Corrs., 814 F.2d 1252, 1255 (8th Cir. 1987), the prisons barred access to white supremacist materials. Here, the Detention Center's ban was not nuanced at all. It banned all magazines, regardless of their content, for all inmates in the Detention Center.

Eighth Circuit precedents indicate that a blanket ban on magazines is clearly established as unconstitutional. In Murphy, the Court invalidated a total ban on Aryan Nations materials received by prisoners because it was more restrictive than necessary to protect prison security. 814 F.2d at 1257 ("A total ban on Aryan Nations materials is more restrictive of prisoner first amendment rights than is necessary to maintain prison security."). The Court ruled again that a blanket ban on white supremacist publications was unconstitutional in Williams for similar reasons. 116 F.3d at 354. See also Nichols v. Nix, 16 F.3d 1228 (8th Cir. 1994) (per curiam) (unpublished opinion) (affirming district court finding that a total ban on materials received from white supremacist group violated the First Amendment). The defendants argue that the law was not clearly established because these precedents involve mail, not magazines. But it is difficult to see how an unconstitutional ban on specific white supremacist materials would not clearly establish that a blanket ban on all magazines, irrespective of their content, is also

10

unconstitutional. The defendants contend that the factored approach from Turner means that there are no bright-line rules or clearly established law, but fundamentally miss the point of the test. Turner clearly establishes that restrictions must reasonably relate to penological interests while not being an exaggerated response. Although Turner is a high-level test, this case involves a high-level ban. Moreover, the defendants do not argue that their policy had any relation to penological interests whatsoever.[2] A total ban on a broad category of materials without regard to their content for seemingly no reason is an exaggerated response, which Eighth Circuit precedents reflect. The Detention Center's change to its policy after Kurtenbach's complaint also suggest that a reasonable official would understand that the policy was an exaggerated response. See Williams, 116 F.3d at 354 ("Prison authorities, in other words, have not been consistent in rejecting these materials, a fact which leads us to believe that rejection, when it occurred, was an exaggerated response."). Because the law was clearly established that the Detention Center's blanket ban on magazines violated the First Amendment, the defendants' motion for Summary Judgment on the basis of qualified immunity should be denied.

Kurtenbach's request for monetary relief is limited by the Prison Litigation Reform Act. 42 U.S.C. § 1997e(e) requires a prisoner to show a physical injury to recover compensatory damages. McAdoo v. Martin, 899 F.3d 521, 525 (8th Cir. 2018) (citing Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004)). As such, Kurtenbach cannot recover compensatory damages for a violation of the First Amendment. See Royal, 375 F.3d at 723 (holding that § 1997e(e) applies to First Amendment violations). Kurtenbach's recovery is limited to nominal damages for the days that he was confined in the Detention Center without access to magazines. See id. at 723–24 (holding that awarding $1.00 in nominal damages was appropriate relief for a First Amendment violation brought under § 1983). Kurtenbach "may not recover some indescribable and

---

[2] It is difficult to reconcile the defendants' concession that their policy is unconstitutional with their argument that the right was not clearly established. Failing to make a colorable argument that the policy is constitutional appears as a tacit admission in this case that the law was clearly established.

indefinite damage allegedly arising from a violation of his constitutional rights." Id. at 724. Kurtenbach may also recover punitive damages if the facts show that the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Id. (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).

### c. Inadequate Diet

Kurtenbach claims that Howell and Blackwelder violated his constitutional rights by failing to provide adequate food and nutrition while he was confined within the Detention Center. In response, Howell and Blackwelder assert qualified immunity and deny that there was a constitutional violation or that there was a clearly established right.

The claim is properly analyzed under the Fourteenth Amendment rather than the Eighth Amendment because Kurtenbach was a pretrial detainee at the time of the alleged violation. See Stearns v. Inmate Servs. Corp., 957 F.3d 902, 906 (8th Cir. 2020) (quoting Bell, 441 U.S. at 535 n.16). Pretrial detainees, like all prisoners, have a constitutional right to nutritionally adequate food. Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992); see also Burgin v. Nix, 899 F.2d 733 (8th Cir. 1990) ("One constitutional protection retained by the prisoner is the right to an adequate diet."). The appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety is deliberate indifference. Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006). Although a pretrial detainee's claim is analyzed under the Fourteenth Amendment, this is the same level of protection that convicted inmates receive under the Eighth Amendment. See id. ("Pretrial detainees and convicted inmates, like all persons in custody, have the same right to these basic human needs. Thus, the same standard of care is appropriate."). A prisoner can show a violation of his constitutional rights by showing "that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." Ingrassia v. Schafer, 825 F.3d 891, 897 (2016) (quoting Wishon, 978 F.2d at 449). To show deliberate indifference, Kurtenbach must show that the defendants "failed to act despite

. . . knowledge of a substantial risk of serious harm." Id. (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)).

The Court finds that there are genuine issues of material fact as to whether Kurtenbach was denied adequate food and nutrition. Fact questions remain regarding the caloric value of what the Detention Center actually serves to the inmates. Although the defendants produced a menu that shows inmates receive an average of 2,850 calories per day, see Doc. 28–5, there is no evidence that the Detention Center followed that menu. Meanwhile, Kurtenbach alleges that the menu does not accurately represent the meals actually served in the Detention Center. Although the Detention Center uses a licensed dietitian to review and approve the menus, she testified that she is not responsible for ensuring that menus are being followed. Kurtenbach alleges that meals would routinely be missing items at breakfast, lunch, and dinner. He states that despite weighing 190 pounds due to a summer of "heavy methamphetamine use," which is below his ordinary weight of 215–220 pounds, he lost over fifteen pounds in a three-month period at the Detention Center. He further states that he spent more time than usual sleeping because he was so lethargic. These allegations sufficiently state a claim of denial of adequate food and nutrition. See Ingrassia, 825 F.3d at 898 (holding that a loss of fourteen pounds in three months was sufficient evidence to show a violation of the constitutional right to adequate nutrition); Davis v. Missouri, 389 Fed. Appx. 579, 579–80 (8th Cir. 2010) (per curiam) (holding that the plaintiff could state a claim for denial of adequate food and nutrition when he alleged that he lost nineteen pounds during six months and that he was always sick and lacked energy to get out of bed). Here, there are no allegations that Kurtenbach was already overweight upon entering the Detention Facility such that any weight loss would be considered normal. See, e.g., Emery v. Helder, 5:16-CV-05193, 2018 WL 715463, at *10–11 (weight loss of 36 pounds over six months insufficient to find a constitutional violation when the plaintiff remained overweight). Kurtenbach can also show deliberate indifference to these jail conditions because he filed a grievance and appeal with Blackwelder and Howell who did nothing to ensure he was receiving adequate food and nutrition. Based on these circumstances, the defendant's Motion for

Summary Judgment on the basis that Kurtenbach failed to establish a violation of his constitutional rights should be denied.

The defendants contend that even if they violated Kurtenbach's constitutional rights, the right to adequate nutrition was not clearly established and they are entitled to qualified immunity. Defendants argue that there is no authority sufficiently on point to the particular circumstances of Kurtenbach's claim that places this constitutional violation beyond debate. But at the time Kurtenbach was incarcerated in the Detention Center, "it was clearly established that a prisoner may properly allege a constitutional violation by demonstrating significant weight loss or other adverse physical effects from lack of nutrition." Ingrassia, 825 F.3d at 899 (quoting Davis, 389 Fed. Appx. at 579). The facts surrounding the plaintiffs weight loss from Ingrassia are substantially the same as they are here, thus, the defendants cannot claim that the law was not clearly established.

At the same time, Kurtenbach cannot recover compensatory damages because even if his weight loss is a physical injury for purposes of the PLRA, it is de minimis. See McAdoo, 899 F.3d at 525 ("We interpret the PLRA to require more than a de minimis physical injury."); Pearson v. Welborn, 471 F.3d 732, 744 (7th Cir. 2006) (holding that loss of 50 pounds is not a "physical injury" under the PLRA); Davis v. District of Columbia, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (holding that weight loss, appetite loss and insomnia do not constitute "physical injury" under the PLRA). According to Kurtenbach, he gained the lost weight back after being transferred to the South Dakota State Penitentiary and within three months weighed 215 pounds. Therefore, similar to his First Amendment claim, his recovery is limited to nominal and punitive damages if proven by the facts.

Accordingly, Summary Judgment on Kurtenbach's claim against Howell and Blackwelder in their individual capacities for violating his constitutional rights by providing inadequate food and nutrition should be denied.

### d. Missed Sentencing Hearing

Kurtenbach claims that Howell and Blackwelder violated his constitutional rights by prohibiting him from appearing by video conference at an October 21, 2020, sentencing hearing in Minnesota. As a result, Kurtenbach was not sentenced until April 5, 2021. Kurtenbach claims that because his sentence was not imposed at the earlier date, he did not begin receiving credit against his Minnesota sentence for the time he served in the Detention Center and the South Dakota State Penitentiary and was forced to serve an extra four and a half months in confinement.

It is unclear exactly how Kurtenbach believes his constitutional rights were violated, and he cites no law to support his argument outside of referencing the Sixth Amendment. He claims that the defendant's actions violated his right of meaningful access to the courts. That right prohibits prison officials from actively interfering with inmate attempts to prepare or file legal documents and requires state courts to waive fees for indigent inmates. See Lewis v. Casey, 518 U.S. 343, 350 (1996). While there can be no doubt that a prison would run afoul of the constitution if it completely barred an inmate from attending any court proceedings, that is not the case here. The scheduling error that happened on October 21 was a one-off occurrence resulting from a slip in communications. Kurtenbach appeared by video for a hearing in the Minnesota court on October 29 and December 31. There is no evidence to suggest that the Detention Center systematically prevented Kurtenbach from appearing in Minnesota court. After the scheduling error led to the missed October 21 hearing, Blackwelder immediately notified Kurtenbach's attorney and rescheduled a time for Kurtenbach to appear. It cannot be said that the defendants prohibited Kurtenbach from accessing the courts.

Moreover, Kurtenbach cannot show that he was injured by the missed hearing. First, it is unclear whether Kurtenbach actually would have been sentenced on October 21 because, based on statements made during the hearing, the presiding judge did not want to sentence Kurtenbach until he was present in Minnesota. The same statements were repeated during the October 29 hearing. Second, even if he did receive a sentence on October 21, Minnesota law does not credit time served from custody outside of

15

Minnesota, which is an issue Kurtenbach contested in his direct appeal for his Minnesota conviction. See State v. Roy, 928 N.W.2d 341, 345 (Minn. 2019); Kurtenbach, 2021 WL 4259162, at *4.

Because there is no basis in law or fact to support this claim, defendant's Motion for Summary Judgment should be granted.

### e. Official Capacity and County Liability

Kurtenbach makes claims against the defendants in their official capacities as well as directly against Codington County. An official capacity claim against an individual is actually a claim "against the governmental entity itself." White v. Jackson, 865 F.3d 1064, 1075 (8th Cir. 2017) (quoting Brockington v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007)).

Because Reiter was working as Deputy State's Attorney, Kurtenbach's official capacity claim against her is treated as a claim against the state of South Dakota. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (quoting Brandon v. Holt, 469 U.S. 464, 471 (1985)). A state is not a "person" within the meaning of § 1983, see id. at 65–66, so this claim should be dismissed.

Kurtenbach's official capacity claims against Sheriff Howell, Blackwelder, and Schimmel are treated as claims against Codington County.[3] "A plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer and therefore must establish the municipality's liability for the alleged conduct." Kelly v. City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016). These claims are redundant because Kurtenbach also brought a claim against Codington County

---

[3] The defendants appear to argue that claims against Howell, Blackwelder, and Schimmel are barred by sovereign immunity. But they are all employed by Codington County, and a county is not entitled to sovereign immunity under the Eleventh Amendment. See Northern Ins. Co. of New York v. Chatham County, 547 U.S. 189, 193 (2006) ("[T]his Court has repeatedly refused to extend sovereign immunity to counties.").

16

directly. See Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, these claims against Howell, Blackwelder, and Schimmel in their official capacities should be dismissed.

To establish municipal liability, "individual liability first must be found on an underlying substantive claim." Brockington, 503 F.3d at 674 (quoting McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005)). Because there is no constitutional violation for Kurtenbach's Fourth Amendment claim or denial of meaningful access to the courts claim, there can be no municipal liability and both claims against Codington County should be dismissed.

Under § 1983, municipal liability for a constitutional violation may only attach if the violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." Mick v. Raines, 833 F.3d 1075, 1079 (8th Cir. 2018) (quoting Corwin v. City of Independence, 829 F.3d 695, 699 (8th Cir. 2016)).

Codington County can be held liable for violating Kurtenbach's First Amendment rights because it had an unconstitutional policy prohibiting all magazines in the Detention Center. A policy is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Corwin, 829 F.3d at 700. "The potential for municipal liability in that situation is well established, because a constitutional violation flows directly from a policymaker's deliberate choice reflected in an official policy or action." Szabla v. City of Brooklyn Park, 486 F.3d 385, 390 (8th Cir. 2007) (en banc). To establish a constitutional violation, no evidence is needed other than a statement of the municipal policy and its exercise. Id. at 390 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 822–23 (1985) (plurality opinion)). Here, Barber alleges that the Detention Center had an official policy banning all magazines regardless of content. The defendants do not dispute that Howell or Blackwelder acted as a policymaker with final authority over the Detention Center's magazine policy. Because Kurtenbach has alleged facts sufficient to create liability for Codington County, the County's motion for summary judgment should be denied.

Although Kurtenbach can sustain his claim for being denied adequate food and nutrition against the individual defendants, he cannot establish municipal liability against Codington County. The County does not have a policy that is unconstitutional on its face; instead, its policy specifically provides inmates with an average of 2,850 calories per day. Kurtenbach has also failed to show that the "inadequacies of the policy were a product of deliberate or conscious choice by policymakers" such that the policy constitutes deliberate indifference to constitutional rights. See Szabla, 486 F.3d at 390. He cannot meet the high bar to establish a custom that involves "a pattern of 'persistent and widespread' . . . practices which bec[o]me so 'permanent and well settled' as to have the effect and force of law." Brockington, 503 F.3d at 674 (quoting Doe v. Special Sch. Dist., 901 F.2d 642, 646 (1990)). Kurtenbach has also not alleged facts sufficient to establish a failure to train that "amounts to deliberate indifference to the rights of persons with whom the [local officials] c[a]me into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). Kurtenbach has failed to allege facts sufficient to establish municipal liability for his insufficient food and nutrition claim, so Codington County's motion for summary judgment should be granted.

Now, therefore,

IT IS ORDERED, as follows:

1. Kurtenbach's claims for declaratory and injunctive relief are dismissed.
2. Kurtenbach's claim against Deputy State's Attorney Reiter in her official capacity is dismissed.
3. Kurtenbach's redundant claims against Sheriff Howell, Chief Correction Officer Blackwelder, and Deputy Sheriff Schimmel in their official capacities are dismissed.
4. Defendants Deputy State's Attorney Reiter and Deputy Sheriff Schimmel's motion for summary judgment based on qualified immunity for Kurtenbach's Fourth Amendment claim is granted.

5. Defendants Sheriff Howell and Chief Correction Officer Blackwelder's motion for summary judgment based on qualified immunity for Kurtenbach's First Amendment Claim is denied.

6. Defendants Sheriff Howell and Chief Correction Officer Blackwelder's motion for summary judgment based on qualified immunity for Kurtenbach's Fourteenth Amendment claim for insufficient food and nutrition is denied.

7. Defendants Sheriff Howell and Chief Correction Officer Blackwelder's motion for summary judgment based on qualified immunity for Kurtenbach's claim that he was denied meaningful access to the courts is granted.

8. Defendant Codington County's motion for summary judgment based on a failure to establish municipal liability for Kurtenbach's Fourth Amendment Claim is granted.

9. Defendant Codington County's motion for summary judgment based on a failure to establish municipal liability for Kurtenbach's First Amendment Claim is denied.

10. Defendant Codington County's motion for summary judgment based on a failure to establish municipal liability for Kurtenbach's Fourteenth Amendment claim for insufficient food and nutrition is granted.

11. Defendant Codington County's motion for summary judgment based on a failure to establish municipal liability for Kurtenbach's claim that he was denied adequate access to the courts is granted.

DATED this 27th day of September, 2022.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge